UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER IDALSKI                      Case No. 16-11560

        Plaintiff,                      Avern Cohn
v.                                       United States District Judge

COMMISSIONER OF SOCIAL SECURITY,         Stephanie Dawkins Davis
                                         United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 15)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On May 2, 2016, plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). This case

was referred to the undersigned magistrate judge for all pretrial purposes by

District Judge Avern Cohn. (Dkt. 3). This matter is before the Court on cross-

motions for summary judgment. (Dkt. 12, 15). On November 9, 2016, plaintiff

filed a corrected brief. (Dkt. 16). Plaintiff also filed a response to the

Commissioner's motion and the Commissioner filed a reply. (Dkt. 17, 18).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims for a period of disability and disability

insurance benefits, along with a claim for supplemental security income on May 12, 2012, alleging disability beginning May 25, 1991.  (Tr. 12).  Plaintiff amended the alleged onset date to May 14, 2012.  (Tr. 44).  Plaintiff's claim was initially disapproved by the Commissioner on October 11, 2012.  *Id*.  Plaintiff requested a hearing, and on July 15, 2014, plaintiff appeared, along with his attorney, before Administrative Law Judge (ALJ) Kathleen H. Eiler, who considered the case *de novo*.  (Tr. 27-59).  In a decision dated August 22, 2014, the ALJ found that plaintiff was not disabled.  (Tr. 9-21).  Plaintiff requested a review of this decision on October 23, 2014.  (Tr. 8).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council on March 31, 2016, denied plaintiff's request for review.  (Tr. 1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART** to the extent it seeks remand, and **DENIED IN PART** to the extent it seeks an award of benefits, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and this matter be **REMANDED** for further proceedings under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1977 and was 35 years old on the amended alleged onset of disability date, which puts him in the category of "younger individual." (Tr. 20).[1] The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had engaged in some substantial gainful activity after the amended alleged onset date, but concluded that there was a continuous 12-month period during which plaintiff did not engage in any substantial gainful activity. (Tr. 14-15). At step two, the ALJ found that plaintiff's hearing loss and Ménière's disease were severe impairments, and that his affective disorder was a non-severe impairment. (Tr. 15). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 48). The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can never climb ladders, ropes or scaffolds but can occasionally climb ramps or stairs, balance, stoop, kneel,

---

[1] The ALJ wrote that plaintiff was 13 years old on the alleged onset date, but this appears to be a typographical error based on the initial alleged onset date, rather than the amended alleged onset date. (Tr. 20). At age 35, plaintiff would still fall into the category of "younger individual." *Id.*

crouch and crawl. He cannot work in a noisy
environment. The claimant must avoid all exposure to
workplace hazards. He can engage in no more than
minimal, superficial interaction with the general public

(Tr. 16-17). At step four, the ALJ concluded that plaintiff could not perform his

past relevant work as a deliverer, freight associate, tire changer, lubrication

servicer, and fast food worker. (Tr. 19). At step five, the ALJ found that plaintiff

was not disabled because he could perform a significant number of jobs available

in the national economy. (Tr. 20-21).

     B.    <u>Plaintiff's Claims of Error</u>

Plaintiff makes a single claim of error. He contends that the ALJ

wrongfully failed to find that he did not satisfy the Listing 2.07 for Disturbance of

labyrinthine-vestibular function. This Listing provides as follows:

2. 07 Disturbance of labyrinthine-vestibular function
(Including Ménière's disease), a history of frequent
attacks of balance disturbance, tinnitus, and progressive
loss of hearing. With both A and B:

A. Disturbed function of vestibular labyrinth
demonstrated by caloric or other vestibular tests; and

B. Hearing loss established by audiometry.

20 C.F.R. Part 404, subpart P, Appendix 1, Listing 2.07. In the ALJ's decision,

she found that plaintiff had severe impairments of hearing loss and Ménière's

disease. Regarding the Listing, the ALJ stated:

> The Claimant's impairments failed to meet or equal listing 2.07 (Disturbance of labyrinthine-vestibular function), because he does not have disturbances of labyrinthine-vestibular function characterized by a history of frequent attacks of balance, disturbance, tinnitus, and progressive loss of hearing with disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests and hearing loss established by audiometry.

(Tr. 16). Plaintiff contends that the ALJ did not discuss which of the elements of the Listing he failed to establish. Plaintiff contends that there are four elements in Listing 2.07 that must be satisfied and there is substantial evidence to support all four elements:

1. A disturbance of labyrinth-vestibular function including Ménière's disease.

Plaintiff states that the ALJ found him to have Ménière's disease so this element is met.

2. A history of frequent attacks of balance disturbance, tinnitus and progressive hearing loss.

Plaintiff points to his testimony regarding his balance disturbance. According to plaintiff, his testimony cannot be characterized in any way other than a description of frequent balance attacks. Plaintiff points out that the ALJ determined that he had a "sedentary exertional level which is consistent with Ms. ldalski's [Claimant's wife] comments regarding poor balance." Plaintiff also testified regarding his constant experience of tinnitus. The ALJ did not comment

on whether she believed plaintiff actually suffered from constant tinnitus, but the record certainly supports that testimony. Regarding progressive hearing loss, the ALJ noted that "Dr. Wong assessed right ear deafness and left ear mild to severe hearing loss." Given the history of the hearing loss beginning years ago following significant head injuries sustained in a motor vehicle accident, plaintiff asserts that it has obviously "progressed."

      3.    Disturbed labyrinth-vestibular function demonstrated by caloric or other vestibular tests.

The ALJ found that testing revealed disturbed labyrinth-vestibular function demonstrated by "testing." The testing, including caloric testing, also demonstrated "central vestibular pathology."

      4.    Hearing loss established by audiometry.

Plaintiff points out that the ALJ acknowledged the existence of hearing loss established by audiometry.

Based on the foregoing, plaintiff maintains that all of the elements of the Listing were met. According to plaintiff, if there is an explanation anywhere in the decision regarding the failure to find that the Listing had been met, it is the ALJ's assertion that the "Disability Determination Service medical examiners disposed of this case after the Claimant's residual functional capacity, meaning no listing was met or equaled." (Tr. 16). Plaintiff points out, however, that the

medical examiners "disposed" of this case on October 11, 2012, well before the critically important testing occurred.

According to plaintiff, disability should have been found based on the Listing and the remainder of the decision regarding plaintiff's alleged residual functional capacity is immaterial. Plaintiff also posits that nothing in that discussion in any way negates the existence of the evidence supporting the conclusion above that the Listing criteria have been met. To the contrary, the ALJ expressly determined that hearing loss was established by audiology, vestibular disturbance was established by "testing" and that balance issues existed to the extent that plaintiff was relegated to sedentary work. Regarding tinnitus, the ALJ did not specifically make a finding one way or another, but the record clearly establishes that claimant suffers from tinnitus and tinnitus is consistent with the affliction of Ménière's disease which the ALJ found to exist.

Plaintiff also points out that an ALJ's findings may not be upheld based on reasons not stated by the ALJ. *Motor Vehicle Mfrs Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("an agency's action must be upheld, if at all, on the basis articulated by the agency itself"); *SEC. v. Chenery Corp.*, 318 U.S. 80, 93-94 (1943) ("The commission's action cannot be upheld merely because findings might have been made and considerations disclosed which would justify the order'"). According to plaintiff, since the ALJ gave no valid reasons to support

his determination that the Listing criteria had not been established, the decision must be overturned.  Plaintiff also maintains that remand of this matter for further hearing or findings is unnecessary.  In *Spencer v. Comm'r of Soc. Sec.*, 3:10 cv 00365 (S.D. Ohio 2012), the district court found that the criteria for Listing 2.07 had been met and reversed the ALJ decision otherwise.  The court went on to rule that remand for further hearing was unnecessary in part because "the record establishes ... plaintiff's entitlements to benefits."  Plaintiff contends that since no further factual development is necessary in this case to determine whether Listing 2.07 has been established, an order reversing this matter for an award of benefits is warranted.

      C.     <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner maintains that the ALJ properly found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 2.07.  (Tr. 16).  The Commissioner points out that it is plaintiff's burden to prove she had an impairment that met a listing, and says he has not done so in this case.  *See Sullivan v. Zebley*, 493 U.S. 521, 525 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severe, does not qualify.").  Although the ALJ's discussion

8

of Listing 2.07 at step three of the sequential evaluation process is concise, the ALJ elsewhere provided a detailed analysis of the record evidence amply supporting his step three finding, including an evaluation of objective medical evidence relevant to the identified listings, such as treatment notes, examinations, and diagnostic findings. (Tr. 14-21). *See Smukala v. Comm'r of Soc. Sec*., 2016 WL 943953, at *10 (E.D. Mich. Feb. 23, 2016), rep. & rec. adopted, 2016 WL 931161 (E.D. Mich. Mar. 11, 2016) ("[I]it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination.").

The Commissioner asserts that the ALJ reasonably determined that the requisite element of a history of frequent attacks of balance disturbance was not met. (Tr. 16). The ALJ acknowledged plaintiff's testimony as to difficulty walking and having balance problems; however, the ALJ also discussed evidence showing plaintiff's balance was not impaired. (Tr. 17-19). According to the Commissioner, the record contains examination reports noting that plaintiff had a steady or normal gait and could ambulate without the use of an assistive device in 2012 and 2013. (Tr. 279, 284, 312). In this regard, plaintiff himself denied using a cane for balance and confirmed that providers had not prescribed one. (Tr. 18, 50, 321). Plaintiff's balance and equilibrium problems were only described as "sporadic" in September 2012 during the consultative examination discussed by

the ALJ. (Tr. 18, 282). Moreover, even when plaintiff was treated specifically for balance difficulties and abnormal gait during physical therapy, he nearly fell but did not actually fall, during the assessment. (Tr. 321). Plaintiff's "balance evaluation score" assessed his balance in a myriad of positions, many of which he could perform safely. (Tr. 318). As the ALJ noted, plaintiff was independent in personal care and able to perform other activities involving balance, such as riding a lawn mower, shopping, and preparing some meals. (Tr. 18, 51, 176-77, 188-89). To the extent plaintiff can cite to evidence of some issue with balance (e.g., plaintiff's reports during physical therapy and his July 2014 hearing testimony), the Commissioner asserts that it was the ALJ's province to weigh any conflicting evidence, and the ALJ reasonably relied on the multiple findings that plaintiff had normal gait and station during multiple examinations, to include, for example, at the conclusion of physical therapy. (Tr. 279, 284, 312); *Bradley v. Sec'y of Health & Human Servs*., 862 F.2d 1224, 1227 (6th Cir. 1988) (Secretary and not the court has the power to weigh all the evidence and resolve significant conflicts in the testimony). Therefore, the Commissioner maintains that the ALJ reasonably found that Plaintiff failed to establish the requisite element of a history of frequent attacks of balance disturbance.

In so finding, the Commissioner says that the ALJ reasonably declined to credit plaintiff's subjective allegations of frequent balance problems. An ALJ

must determine the extent to which the claimant's alleged functional limitations can reasonably be accepted as consistent with the medical and other evidence. This assessment is entitled to "great weight and deference." *Walters*, 127 F.3d at 531. Here, the ALJ permissibly and supportably found that plaintiff was not entirely reliable in conveying the extent of his limitations, including the extent of his balance difficulties. (Tr. 18). As noted, the ALJ discussed plaintiff's ability to perform limited activities of daily living and that plaintiff was able to drive commercially for his employer, despite alleged episodes of vertigo up to fifty times per day. (Tr. 18, 38, 42). Furthermore, the ALJ explained that plaintiff had been able to work after the alleged onset date, even at substantial gainful levels at times, suggesting that his activities were greater than he generally reported. (Tr. 14, 18, 157-59). Ultimately, an ALJ is not "required to accept a claimant's subjective complaints," and, here, the Commissioner says that ALJ provided a robust explanation for finding plaintiff's subjective complaints to be unreliable. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a); Walters, 127 F.3d at 531 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").

The Commissioner also argues that plaintiff's reference to Dr. Feeley's April 2013 opinion as supporting his own testimony of severe symptoms of

balance disturbance, tinnitus and progressive hearing loss is unavailing. As the ALJ properly noted, Dr. Feeley based his opinion solely on plaintiff's provided history, which, as described above, the ALJ supportably found to be unreliable in terms of addressing the severity of plaintiff's alleged impairments. (Tr. 18-19). *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) ("However, this report is based on claimant's subjective complaints."); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

The Commissioner also maintains that, contrary to plaintiff's assertion, the ALJ's step three finding was supported by the opinion of Dr. Evans that plaintiff did not meet Listing 2.07. (Tr. 16, 65-67). Specifically, plaintiff contends that Dr. Evans' review occurred in October 2012, before March 2013 hearing testing occurred, and that the testing reflected disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests, one of the required elements of Listing 2.07. According to the Commissioner, Dr. Evans acknowledged plaintiff's hearing loss, but he also noted that there was no evidence of balance problems during physical examination. (Tr. 66). This is significant because the audiogram results cited by plaintiff do not speak to a history of frequent attacks of balance disturbance. *See e.g.*, *Stark v. Colvin*, 2015 WL 5320551, at *2 (M.D. Tenn. Sept.

11, 2015) (finding substantial evidence supported the ALJ's conclusion that the claimant did not meet Listing 2.07 because there was "no objective evidence of frequent balance disturbance" during the period at issue). Thus, the subsequent evidence plaintiff points to fails to undercut the ALJ's reliance on Dr. Evans's opinion with respect to the critical issue of whether plaintiff met the element of a history of frequent attacks of balance disturbance under Listing 2.07. "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1002 (6th Cir. 2011) (quoting Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). In this case, the Commissioner asserts that Dr. Evans' opinion supports the ALJ's step three finding, even considering the subsequent audiogram or VNG report. According to the Commissioner, plaintiff has not demonstrated that his impairments met or equaled every element of a listed impairment, and thus the ALJ reasonably found that plaintiff did not meet his step-three burden in this case. *See Sullivan*, 493 U.S. at 530.

On this point, the Commissioner acknowledges that there is some evidence of balance disturbance in the administrative record subsequent to Dr. Evans's opinion – specifically, that plaintiff received physical therapy for balance deficits.

(Tr. 304-07, 314-22). However, the Commissioner contends that this evidence also fails to undermine Dr. Evans's opinion. Indeed, the Commissioner says that the physical therapy notes do not evidence any "frequent attacks of balance disturbance," they show at most that plaintiff almost fell on one single occasion, and moreover, that he only exhibited antalgic gait "at times" (e.g. the August 2013 therapy session). (Tr. 315, 321). Accordingly, the Commissioner asserts that nothing in these treatment notes undermines the probative value of Dr. Evans's opinion, especially in light of the ALJ's reasonable conclusion not to credit plaintiff's subjective symptom reports. Indeed, the ALJ's step three finding was supported by substantial evidence of normal balance behavior by Plaintiff, as summarized above.

Even though plaintiff has not shown he met Listing 2.07 because he failed to present credible evidence of a history of frequent attacks of balance disturbance, the Commissioner also addresses his arguments about the remaining elements of Listing 2.07. For example, in addition to plaintiff's discussion of caloric testing, plaintiff also asserts that he suffered from constant tinnitus, which the ALJ did not comment on and the record "certainly supports" and that his hearing loss has "obviously progressed." (P. Br. at 7). According to the Commissioner, the ALJ thoroughly discussed plaintiff's hearing impairments, to include explicit discussion of plaintiff's testimony regarding constant tinnitus, the

statement of plaintiff's wife about his ringing in his ears and difficulty hearing, and the audiogram results. (Tr. 17, 18, 19). As the ALJ explained, treatment records did not document particular limitations related to plaintiff's hearing impairments in contrast to the allegations of disabling symptoms. (Tr. 18). Indeed, the ALJ noted that plaintiff was able to work, albeit with some difficulty, even at positions that involved answering telephones and assisting customers. (Tr. 18, 42). The ALJ also noted that plaintiff earned his college degree by completing some in-person classroom instruction, which would require some ability to hear the instructor. (Tr. 18, 50-51). Again, the Commissioner maintains that the ALJ's subjective symptom evaluation is entitled to deference, and, in this case, provides evidence against the severity of plaintiff's symptoms involving hearing impairment. *Walters*, 127 F.3d at 531.

To the extent plaintiff relies on *Spencer v. Astrue*, 2012 WL 404896 (S.D. Ohio Feb. 8, 2012), rep. & rec. adopted sub nom. *Spencer v. Comm'r of Soc. Sec.*, No. 10-365, 2012 WL 966053 (S.D. Ohio Mar. 21, 2012), the Commissioner asserts that the facts of this case are readily distinguishable. In *Spencer*, the district court found that the ALJ improperly discounted a medical opinion stating that the claimant met or equaled Listing 2.07. *Id*. at *9. Here, there is no such medical opinion evidence stating plaintiff met or equaled every element of Listing 2.07, nor has plaintiff asserted such.

D.    Plaintiff's Reply Brief

Defendant focuses entirely on the element of Listing 2.07 which requires a history of  frequent attacks of balance disturbance.  Defendant maintained that the ALJ determined that the  requisite element of a history of frequent attacks of balance disturbance was not met, citing page 16 of the transcript.  According to plaintiff, a review of page 16 of the transcript indicates only that the ALJ did not find that plaintiff's impairment met Listing 2.07 because not all of the  criteria of that Listing had been established, without any indication of the particular element(s) of the Listing that were absent.  Thus, plaintiff says that the Commissioner's claim that the ALJ determined that he had no history of balance attacks is completely unsupported by the record.  Rather, plaintiff maintains that the ALJ relied entirely on the State agency medical consultant who opined that he did not meet the listing requirements.  According to plaintiff, the problem with the ALJ's reliance upon the State medical consultant's findings is that the findings of the State medical consultant was made before the performance of the caloric testing which is a significant element of the Listing and which is unchallenged by the Commissioner.

While the Commissioner argues that there was evidence in the record to support a finding that he did not have frequent attacks of balance disturbance, plaintiff asserts that such findings were not made expressly by the ALJ.

Moreover, the evidence on which the Commissioner relies, in fact, supports the findings of a history of problems with balance. Thus, plaintiff asserts that there is nothing in the record to support the Commissioner's claim that the ALJ found that plaintiff lacked a history of frequent balance attacks. According to plaintiff, there are, however, several specific findings by the ALJ which necessarily depend on a finding of significant balance issues. The ALJ determined that plaintiff's affliction with Ménière's Disease is "severe . . . because [it] significantly limit[s] the Claimant's ability to perform basic work activities." (Tr. 15). Moreover, the ALJ notes that he imposed "additional restrictions [relative to Claimant's residual functional capacity] based on the Claimant's allegations of dizziness." (Tr. 17). Finally, the ALJ relied on plaintiff's wife's statement that he suffered from poor balance and found that those problems "limited the Claimant to a sedentary exertional level which is also consistent with Mr. ldalski's comments regarding poor balance." (Tr. 19). Thus, contrary to the Commissioner's assertion, the ALJ specifically found that his balance issues were so severe that he would be unable to work on his feet. Moreover, according to plaintiff, there is no other evidentiary basis in the record other than a history of frequent balance disturbances that would support the ALJ's specific determination that plaintiff was limited to sedentary work.

E.    The Commissioner's Reply

In his reply, the Commissioner says that even if the ALJ could have been more specific in his step three analysis, plaintiff overlooks the fact that the record as a whole provides sufficient support for the ALJ's finding that plaintiff did not meet or equal Listing 2.07 because he "[did] not have disturbance of labyrinthine-vestibular function characterized by a history of frequent attacks of balance . . . ." (Tr. 16); *see Bradford v. Sec'y of the Dep't Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986) (ALJ decision should be read as a whole); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) ("It is well established that judicial review of the Secretary's findings must be based upon the record taken as a whole.").

Moreover, plaintiff also now argues that, in support of Listing 2.07, "the ALJ specifically found that Claimant's balance issues were so severe that he would be unable to work on his feet." (Dkt. 17 at 2). To support this contention, plaintiff refers to the ALJ's residual functional capacity ("RFC") limiting him to sedentary work. (Dkt. 17 at 2). According to the Commissioner, plaintiff's argument reflects a mischaracterization of the RFC and does not establish that plaintiff met the required element of Listing 2.07 – a history of frequent attacks of balance disturbance. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. A limitation to sedentary work does not equate to an inability to work on one's feet, as plaintiff

suggests. Instead, sedentary work requires periods of standing and walking no more than two hours of an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Moreover, plaintiff's RFC specifically limited him to only occasional balancing. (Tr. 17). Therefore, the ALJ's RFC determination acknowledged plaintiff's issues with balance, but plaintiff's argument that an RFC for sedentary work establishes a history of frequent attacks of balance disturbance, as required by Listing 2.07, should be rejected.

## III.    DISCUSSION

### A.    Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in

substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

As previously noted, if a claimant does not have current substantial gainful employment and suffers from a qualifying severe impairment, the ALJ must assess whether the claimant satisfies a listed impairment. *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641 (6th Cir. 2013); 20 C.F.R. § 416.920(a)(4)(iii). If a claimant's impairments meet or equal a listed condition, the ALJ must find him disabled. *Id*. When considering presumptive disability at Step Three, an ALJ

must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review. *Hoffmeyer v. Comm'r. of Soc. Sec.*, 2015 WL 12670493, at *10 (E.D. Mich. Aug. 17, 2015), report and recommendation adopted sub nom. *Hoffmeyer v. Colvin*, 2015 WL 6735337 (E.D. Mich. Nov. 4, 2015) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)). An ALJ's failure to sufficiently articulate his Step Three findings is error. *See id*. (citing *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp.2d 846, 858-59 (E.D. Mich. 2012)); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. 2012) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").

For example, in *Andrews v. Commissioner of Social Security*, 2013 WL 2200393 (E.D. Mich. May 20, 2013), plaintiff argued that the ALJ erred in failing to consider whether her cervical and lumbar spine impairments meet or medically equal Listing 1.04A for "disorders of the spine." *Id*. at *12. The ALJ there simply stated: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments[.]" *Id*. The court noted that the ALJ explicitly found that plaintiff suffers from degenerative disc disease and cervical spondylosis, and thus "should have considered and discussed

[plaintiff's] impairment(s) relative to Listing 1.04A," and "[h]er failure to do so constitutes legal error." *Id.* at *12.

The requisite explanation and support need not be located entirely within the section of the ALJ's decision devoted specifically to step three; courts have endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011); *see also Smith v. Comm'r of Soc. Sec.*, 2012 WL 4897364, at *6 (E.D. Mich. Sept.14, 2012). Moreover, this court will not overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. *See M.G*, 861 F.Supp.2d at 859. Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled...." *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at *5-6 (E.D. Tenn. Mar. 1, 2010)). Thus, remand is not required where the evidence makes clear that even if he "had made the required findings, [he] would have found the claimant not disabled." *Id*.; *see Hoffmeyer*, 2015 WL 12670493, at *10 (To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria). Conversely, remand is appropriate in cases where the court's review of the ALJ's decision and the record evidence leaves open the possibility that a listing is met. *Hoffmeyer*, 2015 WL

12670493, at *10 (citing *Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing")).

Listing 2.07 provides as follows:

> Disturbance of labyrinthine-vestibular function (including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
>
> A.  Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
>
> B.  Hearing loss established by audiometry.

20 C.F.R. § Pt. 404, subpt. P, app. 1. The record shows by testing that plaintiff suffers from Ménière's disease and had a disturbance of vestibular labyrinth demonstrated by caloric and other vestibular tests and hearing loss established by audiometry testing. The record also contains plaintiff's reports of balance disturbance, confirmed by clinical evidence of gait abnormalities and vertigo (Tr. 309, 314, 315, 319, 320), tinnitus (Tr. 279, 282-83, 289, 324, 326) and loss of hearing (Tr. 279, 282, 309, 326). Notably, the ALJ observed that Dr. Wong concluded that plaintiff was deaf in one ear and had substantial hearing loss in the other ear based on the audiogram. (Tr. 18, 328-330). Nevertheless, the ALJ's entire explanation of his consideration of whether these impairments met Listing

2.07 is as follows:

> The claimant's impairments failed to meet or equal
> listing 2.07 (Disturbance of labyrinthine-vestibular
> function), because he does not have disturbance of
> labyrinthine-vestibular function characterized by a
> history of frequent attacks of balance, disturbance,
> tinnitus, and progressive loss of hearing with disturbed
> function of vestibular labyrinth demonstrated by caloric
> or other vestibular tests and hearing loss established by
> audiometry.
>
> * * *
>
> The undersigned concluded the evidence did not
> demonstrate the claimant's impairments rose to listing
> level severity, and that no acceptable medical source had
> mentioned findings equivalent in severity to the criteria
> of any listed impairment, individually or in combination.

(Tr. 16). This conclusory statement, in light of the evidence in the record arguably

supporting a finding that plaintiff's condition met or equaled listing 2.07, is simply

insufficient to state with any measure of clarity the grounds for the ALJ's decision.

Indeed, the decision provides the type of blanket statement uniformly condemned

as insufficient. *See Tapp*, 2011 WL 4565790, at *5. Even assuming that the ALJ

found that plaintiff did not meet Listing 2.07 because he lacked "frequent attacks

of balance disturbance," while the ALJ does briefly discuss plaintiff's balance

issues in more detail elsewhere in the decision (*see* Tr. 17, 19), that discussion

does not analyze the claimant's impairments in relation to each of the criteria of

the Listed Impairments so as to facilitate meaningful review.

For example, the ALJ mentions plaintiff's tinnitus and hearing loss, but

does not assess whether this aspect of the Listing was satisfied. The Commissioner's reliance on the ALJ's conclusion that the treatment records did not document particular limitations related to plaintiff's hearing impairments does not cure the failure to discuss the hearing loss and tinnitus in the context of meeting the requirements of Listing 2.07. The Commissioner's *post-hoc* reliance on the ALJ's RFC determination does not provide a logical bridge to the ALJ's conclusion that the Listing was not satisfied. *See Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (The court "may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 (1983)); *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order.... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'"). Indeed, the ALJ's abridged discussion of plaintiff's severe impairments does not analyze plaintiff's condition relative to each criterial of Listing 2.07 and thus amounts to error.

The undersigned is also not persuaded that the ALJ may simply rely on the opinion of Dr. Evans to support his conclusions. Were the issue equivalency, that

might be so.  But an ALJ, not a medical advisor, is tasked with determining

whether a claimant's severe impairments meet the Listing and does not require a

medical opinion in order to do so.  *See e.g.*, *Stratton v. Astrue*, 987 F.Supp.2d 135,

148 (D. N.H. 2012) (SSR 96-6p treats equivalence determinations differently from

determinations as to whether an impairment meets a listing, requiring expert

evidence for the former, but not the latter.) (citing *Galloway v. Astrue*, 2008 WL

8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that

while an ALJ is capable of reviewing records to determine whether a claimant's

ailments meet the Listings, expert assistance is crucial to an ALJ's determination

of whether a claimant's ailments are equivalent to the Listings.") (citation and

quotation marks omitted)).  That is why the ALJ is required to analyze the medical

evidence and testing that came into the record after Dr. Evans issued his opinion;

that is, the ALJ is required to make those specific findings based on the whole

record, and cannot simply summarily rely on a medical opinion that was issued

before some of the most significant medical evidence was placed in the record.

These errors would be harmless if concrete factual and medical evidence

apparent in the record shows that even if the ALJ had made the required findings,

the ALJ would have found the claimant not disabled.  *M.G.*, 861 F.Supp.2d  at

861.  The ALJ's failure to adequately assess plaintiff's severe limitations under

Listing 2.07 is not harmless, however.  Records reviewed demonstrate that

plaintiff has hearing loss and tinnitus, documented by medically accepted testing and clinical observations, and some documented difficulties with balance and gait. Given this evidence, which leaves open the possibility that the Listing was met, remand for proper analysis under Listing 2.07 is warranted.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART** to the extent it seeks remand, and **DENIED IN PART** to the extent it seeks an award of benefits, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 24, 2017                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 24, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov